## In re GERDAU.

### (Circuit Court, S. D. New York. February 6, 1893.)

1. CUSTOMS DUTIES—IVORY.
   The provisions of paragraph 618 of the tariff act of October 1, 1890, admitting, free of duty, ivory not sawed, cut, or otherwise manufactured, do not apply to elephants' tusks sawed into pieces of various lengths, when such sawing requires skill and judgment, and is done, not for convenience in transportation, but to separate the ivory into different grades, adapted to different uses. Hartranft v. Wiegmann, 7 Sup. Ct. Rep. 1240, 121 U. S. 609, distinguished.

2. SAME—CONSTRUCTION OF LAWS — KNOWLEDGE OF WAYS AND MEANS COMMITTEE.
   An importer of ivory called the attention of the ways and means committee to the fact that a certain provision relating to cut ivory in a tariff bill then in preparation would make a tusk once sawed dutiable, but the bill was not changed in this respect. Act Oct. 1, 1890, par. 618. *Held*, that it should be presumed that congress intended to make ivory once sawed subject to duty.

3. SAME—PROTEST—REVERSAL OF APPRAISERS' DECISIONS.
   To entitle an importer to a reversal of a decision by the board of general appraisers, as provided in the tariff act of June 10, 1890, it must be proved that the classification contended for by him is right, and not merely that the collector's classification is wrong.

Appeal by the importer from decision of the board of general appraisers affirming the decision of the collector of the port of New York. Affirmed.

Stephen G. Clarke, for importer.

James T. Van Rensselaer, Asst. U. S. Atty., for collector.

COXE, District Judge. The merchandise in question consists of parts of elephants' tusks, sawed into pieces of various lengths. The collector classified it under paragraph 462 of the new tariff as "manufactures of ivory * * * not specially provided for in this act, forty per centum ad valorem." The importer protested, insisting that it was entitled to free entry under the provisions of paragraph 618, as "ivory and vegetable ivory, not sawed, cut, or otherwise manufactured." The board overruled the protest and sustained the collector. The importer appeals.

The following facts are found by the board: That the different parts, into which the tusks are sawed, are especially adapted to different uses, the sawing being done with reference to this selec-

tion; that certain parts of the tusk, which are worth from 50 to 100 per cent. more than certain other parts, are separated from the parts of less value by sawing; that the grades of ivory, having been thus selected, are designed for different uses and are marketed in different countries; that sawing or cutting ivory requires expert skill and judgment, the operation being performed not for convenience in transportation, but for the purpose of selection. Samples of the importation were presented at the argument, consisting of tusks sawed into pieces of different lengths. Some pieces were short, others long. One large tusk had been sawed but twice, once near the middle and once near the end. No distinction was made, however, either at the argument or in the briefs between the various samples. They will, therefore, be considered together, it being assumed that they present the same characteristics so far as the present controversy is concerned. If the merchandise in question is "ivory, not sawed or cut," the importer is entitled to a reversal; if it is "ivory, sawed or cut," the decision of the board should be affirmed. It is wholly immaterial whether or not the collector has classified it for duty under the right section.

Does the paragraph quoted from the free list apply? This is the only question. The language of the law is very plain. It says, as explicitly as possible, that only ivory which is not sawed or cut can enter duty free. That this ivory is sawed is admitted. Here, then, would seem to be an end of the controversy. But it is argued that the language does not mean what it says, and that a sawing which is the equivalent of a manufacture, is implied. In other words, that a longitudinal sawing or cutting of the ivory into rudimentary piano keys, knife and pistol handles, was meant. If the language were ambiguous there might be room for judicial interpretation, but it is not. It says ivory which is sawed is dutiable, ivory which is cut is dutiable, and ivory which, by some process different from sawing or cutting, is manufactured, is dutiable. It would seem that, on the face of the statute, congress, so far as ivory is concerned, considered sawing and cutting as two species of manufacture. These two, being known, were mentioned eo nomine, but there might be other processes by which ivory could be manufactured, and hence the general clause, "or otherwise manufactured." But whether this be so or not, it seems too clear for debate that the importations are subject to duty whether they are manufactured or not. If the language of the free list simply had been "ivory, not sawed," there would be little room for argument that ivory which was sawed could enter free. The addition of the words "cut, or otherwise manufactured" if it does not add to, certainly does not diminish the strength of the collector's position. Certainly there is little force in the suggestion that the sawing or cutting must in every case amount to a manufacture. If that had been the intention of congress the language would have been the same as in paragraph 726 of the act of 1883, "ivory, unmanufactured." There would have been no difficulty, under the various decisions of the courts, in arriving at the true meaning of the word "unmanufactured," appearing in such a connection. Hartranft v. Wieg-

mann, 121 U. S. 609, 7 Sup. Ct. Rep. 1240; U. S. v. Semmer, 41 Fed. Rep. 324.

The words "not sawed or cut" cannot be read out of the statute; they are there and must receive some construction. What other meaning they can have than the one contended for by the collector I am at a loss to conjecture. Were it necessary to resort to extrinsic circumstances to arrive at the legislative intent, a persuasive piece of evidence is found in the record. It appears that the importer, Mr. Gerdau, called the attention of the ways and means committee of the fifty-first congress to the fact that if the language of paragraph 618 became law, a tusk of ivory which was once sawed transversely would be subject to duty. There was no misunderstanding at that time as to the true meaning of the paragraph; all understood it alike. With the attention of congress thus sharply drawn to the inevitable result of the proposed enactment it must be presumed that they legislated in the light of this knowledge. If they had intended to permit the free entry of sawed ivory they would have modified the paragraph; not having done so, the presumption is clear that they did not so intend. The case of Hartranft v. Wiegmann, supra, is not in point. The court was there dealing with a provision of the law which placed on the free list "shells * * * not manufactured." If the statute had read "shells, not cleaned, ground, or otherwise manufactured" it is manifest that the decision would have been different. The reasoning of the board in the able opinions returned with the record is, to my mind, unanswerable, and their decision should be affirmed.