CORBITT & MACLEAY CO. v. UNITED STATES.

(Circuit Court, D. Oregon. March 18, 1907.)

No. 2,371 (1,361).

1. CUSTOMS DUTIES—CLASSIFICATION—BURLAPS—DOUBLE-WARP BAGGING.
   The provision for "burlaps," in Tariff Act Aug. 27, 1894, c. 349, § 2, Free List. par. 424½, 28 Stat. 539, does not include so-called double-warp Dundee bagging.
   [Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States, 18 C. C. A. 545.]

2. SAME—PROTEST—SUFFICIENCY—WRONG CLAIM.
   Goods, which should have been classified free of duty under a paragraph relating to "jute bagging," were asserted in the importers' protest to be free under a paragraph relating to "burlaps," and there was no suggestion that the importers at the time of filing the protest had in mind

the former provision. *Held*, that the protest did not set forth the importers' objections "distinctly and specifically," within the meaning of Customs Administrative Act June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933].

On Application for Review of a Decision of the Board of United States General Appraisers.

Williams, Wood & Linthicum, for appellant.
W. C. Bristol, U. S. Atty.

WOLVERTON, District Judge. This is an application for a review of the decision of the United States General Appraisers relative to the duty imposed upon a certain jute cloth imported by the Corbitt & Macleay Company August 21, 1895. The collector of customs assessed a duty of 35 per cent. ad valorem under paragraph 277 of the act of August 27, 1894 (chapter 349, Schedule J, 28 Stat. 530). The importers made protest as follows:

"We claim the same to be burlaps (hop cloth) and is provided for under paragraph 424½ tariff act of Aug. 28, 1894, and entitled to entry free of duty, as the same is known in the market and by common usage as burlaps, and that paragraph 424½ relates to this article particularly as burlaps not otherwise provided for, and that paragraph 277 does not specially provide for this class of goods."

The General Appraisers ruled adversely to the protest, for the reason that the protestants claimed that the fabric imported was burlap, entitled to free entry under paragraph 424½ of the existing tariff act, and the appraisers found that it was not burlap because the warp was double. Act Aug. 27, 1894, c. 349, Free List, 28 Stat. 539.

Two questions are presented for consideration: First, whether the importation should be classed under the tariff act as burlap; and, second, if not, whether it should be admitted free of duty as jute bagging under paragraph 392½. The appraisers found that the fabric was what is known as "double-warp Dundee bagging, commonly invoiced as D. W. Bagging"; that it was made of jute, and was double-warp in its structure; that it was "not the article known as burlaps, nor was it known as such at or before the 28th day of August, 1894, commercially or otherwise"; and that "so far as the Board is advised, it has never been classed as a burlap in customs practice at any port in this country." By a former decision, in the matter of the protest of D. W. MacLeod & Co. (G. A. 1,129), the Board found and decided:

"That the word 'burlap' or 'burlaps' is a commercial term of American origin, and is understood to mean in the trade a coarse textile fabric composed of flax, hemp, or jute (but more recently of jute only), plain woven in a single weft and single warp, and varies in width from 12 to 216 inches, and in weight from 16 to 20 ounces per yard, according to the uses for which the goods are designed."

This decision was affirmed in the case In re White (C. C.) 53 Fed. 787. The court does not attempt, however, to define the word "burlap" or "burlaps," and it is only in a general way that the decision of the appraisers in that regard is approved. A reference to a fabric

of similar texture is made in the case of McLeod v. United States (C. C.) 75 Fed. 927, wherein the court says:

"The articles in question are manufactures of jute, with the single warp and single weft characteristic of burlaps."

This would seem to indicate that the court was of the opinion that burlaps consisted of a single warp and single weft only, thus differentiating them from goods having a double warp and single woof. However this may be, and whatever may be the technical definition of burlaps, and whether the term is properly applicable to the article here under consideration, it is clear from the finding of the appraisers that it is not known in commerce as burlap, but, on the other hand, is known as jute bagging, and commonly invoiced as such; and it is this condition that fixes the classification.

Paragraph 277 of the tariff act reads:

"All manufactures of flax, hemp, jute, or other vegetable fiber, except cotton, or of which these substances or either of them is the component material of chief value, not specially provided for in this act, thirty-five per centum ad valorem."

And under the free list, paragraph 392½ reads:

"Bagging for cotton, gunny cloth, and all similar material suitable for covering cotton, composed in whole or in part of hemp, flax, jute, or jute butts."

And paragraph 424½:

"Burlaps, and bags for grain made of burlaps."

So that, in consideration of the appraisers' findings as to the known commercial designation of the goods, it was not entitled to classification as burlaps, under paragraph 424½.

As it relates to the second question, it is very apparent that it was admissible free of duty as jute bagging, under paragraph 392½. But the government urges that the claim made was not specific to bring it within that paragraph, and that therefore the importers are precluded from now insisting that it is so exempt from duty.

By the fourteenth section of the act of June 10, 1890, which is now in force and effect, the protestant is required to set forth his claim "distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon." 26 Stat. 137, c. 407 [U. S. Comp. St. 1901, p. 1933]. This statute is an amendment of a prior one, but without changing the purpose as it respects the subject-matter under consideration. In dealing with the purpose of the prior statute, Mr. Justice Curtis has said, in Warren v. Peaslee, Fed. Cas. No. 17,198, that the act "had two main objects in view; one being to apprise the collector of the objections entertained by the importer, before it should be too late to remove them, if capable of being removed; the other, to hold the importer to those objections which he then contemplated, and on which he really acted, and prevent him, or others in his behalf, from seeking out defects in the proceedings, after the business should be closed by the payment of the money into the treasury."

In a later case (Davies v. Arthur, 96 U. S. 148, 24 L. Ed. 758) it is said:

"Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated."

And so in another case (Schell's Executors v. Fauché, 138 U. S. 562, 11 Sup. Ct. 376, 34 L. Ed. 1040):

"A protest which indicates to an intelligent man the ground of the importer's objection to the duties levied upon the articles should not be discarded because of the brevity with which the objection is stated."

In pursuance of these rulings it has been held, where the protest referred to an act that had been superseded by a later one, it being apparent that the protestant had made a mistake as to the law then in force, that his claim should not be rejected, and that the claim was sufficiently specific to bring it within the intendment of the act of June 10, 1890. Shaw v. United States, 122 Fed. 443, 58 C. C. A. 425. So, in another case, where the protest set forth "that the said goods under existing laws are dutiable at two cents per pound, and the exaction of a higher rate is unjust and illegal," it was held that it was sufficient, in view of the fact that there were but three paragraphs bearing upon the article subject to duty, and two of these made the article bear duty at two cents per pound. It is said there, by Mr. Justice Shiras, who announced the opinion of the court, that:

"The collector could not have been perplexed by the omission to name the specific paragraph which the importer sought to have applied, for there were but two paragraphs, besides 239, which dealt with the subject, namely, paragraphs 318 and 319, and under either of them the duty was that claimed by the importer, two cents per pound." United States v. Salambier, 170 U. S. 621, 18 Sup. Ct. 771, 42 L. Ed. 1167.

These cases are illustrative, and indicate that absolute precision is not required, so that the specific claim that the protestant has in mind is brought with reasonable intendment to the attention of the collector of customs, to the end that that officer may make the correction, if an error has been made in his assessment.

In the case of Herrman v. Robertson, 152 U. S. 521, 14 Sup. Ct. 686, 38 L. Ed. 538, it was held that the protest was defective and insufficient, because it failed to point out or suggest in any way the provision which actually controlled, and in effect only raised the question as to which of two clauses, under one or the other of which it was assumed that the importation came, should govern as being most applicable.

United States v. Bayersdorfer & Co., 126 Fed. 732, 62 C. C. A. 16, is in point. The claim in that case was that the goods were free of duty either under paragraph 617 or 548 of the present act, or that, if dutiable, they were subject to a duty of only 10 per centum under section 6. The Board of Appraisers found that the merchandise was on the free list, and was properly referable to paragraph 566, yet held that, because the claim of the protestants was not made under that

paragraph, nor was so specified as to bring it within the purview thereof, it should be rejected. The matter coming before the Circuit Court, the finding of the appraisers was reversed; but, on appeal to the Circuit Court of Appeals, the Circuit Court was reversed, and the decision of the appraisers affirmed, for the reason assigned by them. The court says:

"But the protests in question here not only failed to call the collector's attention to the paragraph which it is now claimed governed, but the importers based their objections upon other specified provisions of the act, under which they claimed that the merchandise was either entitled to free entry, or was subject to a less rate of duty than the collector had assessed. Having regard to the terms of these protests, how can it be said that an objection which is grounded upon a paragraph not therein mentioned or referred to was at the time in the mind of the importers, or that it was so 'distinctly and specifically' brought to the notice of the collector as to apprise him of the 'true nature and character' of the objection, 'to the end that he might ascertain the facts, and have an opportunity to correct the mistake'?"

In another case, decided by the same court at the same time (United States v. George Knowles & Son, 126 Fed. 737, 62 C. C. A. 62) the importation involved was of merchandise invoiced as crude flint stone. The collector assessed it for duty under paragraph 98 of the tariff act of October 1, 1890 (chapter 1244, Schedule B, 26 Stat. 571). The importers filed a protest claiming free entry under paragraph 574. The Board of Appraisers held that paragraph 574 did not apply, and affirmed the collector's decision. The view was expressed that paragraph 651 of the free list applied; but, notwithstanding, the board held that, inasmuch as the importers had not called the attention of the collector to that paragraph, but in their protest had put their claim upon paragraph 574, they were bound thereby. This case, like the former one, was appealed to the Circuit Court and reversed; but, upon an appeal to the Court of Appeals, the Circuit Court was reversed, and the decision of the Board of Appraisers affirmed. The facts of this latter case are so similar to those found here that there is left no room for distinction. The protestants' here claimed specifically that the fabric was burlap, free of duty under paragraph 424½; but, as I have shown, it is not subject to classification as burlaps, because not so commercially known in the market. There was no claim made that it was jute bagging, or that it was nondutiable under paragraph 392½. No reference whatever was made to that paragraph, and, from a reading of the claim in its entirety, there is no suggestion that the protestants had in mind at the time of filing the protest that the fabric was admissible free of duty under paragraph 392½. The only indication anywhere in the claim which would suggest that they intended to bring it within that paragraph is the use of the term "Hop cloth" contained in parenthesis; but that was only inserted as another name for burlap, and not that it was designed to indicate that the fabric was jute bagging.

For the reason therefore, that the claim was not preferred in view of paragraph 392½, but was that the fabric was burlap, admissible free of duty under paragraph 424½, the judgment of the appraisers must be affirmed, and it is so ordered.